26 C.C.P.A. (Customs)

## FABER, COE & GREGG, Inc., v. UNITED STATES.

### Customs Appeal No. 4109.

United States Court of Customs and Patent Appeals.

March 28, 1938.

Rehearing Denied May 31, 1938.

Benjamin A. Levett, of New York City (James L. Gerry, of New York City, of counsel), for appellant.

Joseph R. Jackson, Asst. Atty. Gen. (Richard E. FitzGibbon, Sp. Atty., of New York City, of counsel), for the United States.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from a judgment of the United States Customs Court, Third Division, overruling appellant's protest against the assessment of duty by the collector at the port of New York on cigars imported from Cuba and entered for consumption on October 16, 1934.

The cigars were assessed with duty at $2.25 per pound and 12½ per centum ad valorem under paragraph 605, section 1, of the Tariff Act of 1930, 19 U.S.C.A. § 1001, par. 605, as modified by a proclamation by the President of the United States on August 24, 1934, 49 Stat. 3559. The proclamation was issued in accordance with a reciprocal trade agreement with Cuba (66 Treas. Dec. 190), entered into on August 24, 1934, pursuant to the provisions of an act of Congress, approved June 12, 1934, entitled "An Act To amend the Tariff Act of 1930." 48 Stat. part 1, p. 943, Public, No. 316, 19 U.S.C.A. §§ 1351–1354.

The correctness of the duties so assessed by the collector is not challenged by appellant in this appeal.

Before the cigars were released from customs custody, and prior to the collector's liquidation of the entry, revenue stamps were purchased by the importer in payment of the tax provided by section 400 of the Revenue Act of 1926 (U.S.C. title 26, section 832, 26 U.S.C.A. §§ 700(c), 701(a), and affixed to the imported merchandise in accordance with the provisions of section 845, U.S.C. title 26, 26 U.S.C.A. §§ 830(b), 881.

The sole issue in the case is the claim made by counsel for appellant; that is, that, by virtue of the provisions of the reciprocal trade agreement with Cuba, appellant is entitled to a 20 per centum reduction of the tax represented by the revenue stamps.

It is conceded by counsel for both parties, and it was so held by this court in the case of Faber, Coe & Gregg v. United States, 19 C.C.P.A., Customs, 8, T.D. 44851, that the so-called internal revenue tax provided for in sections 832 and 845 (26 U.S.C.A. §§ 700(c), 701(a), 830(b), 881), supra, is a customs duty.

In our decision in the Faber, Coe & Gregg Case, supra, we held that, "although additional to and separate from the regular or primary duties provided by the Tariff Act of 1922," revenue taxes assessed on imported merchandise in accordance with sections 832 and 845 (26 U.S.C.A. §§ 700(c), 701(a), 830(b), 881), supra, were customs duties; that, without regard to how they might be designated by the Congress, "taxes imposed on imported merchandise while it retains its 'distinctive character' as an import are customs duties, *whether they be imposed at the time of importation or subsequent thereto*"; and that the importer of cigars from Cuba was not entitled to a 20 per centum reduction of such revenue taxes or additional duties under the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba, December 11, 1902, approved by the Congress, December 17, 1903 (33 Stat. 3, U.S.C. title 19, sections 124 and 125, 19 U.S.C.A. §§ 124, 125). (Italics not quoted.)

It is conceded by counsel for appellant that our decision in the Faber, Coe & Gregg Case, supra, is decisive of the questions there raised and determined. Counsel contend, however, that, by virtue of the reciprocal trade agreement with Cuba of August 24, 1934, 49 Stat. 3559, appellant is entitled to a reduction of 20 per centum of such revenue taxes or additional duties on

the cigars here involved. It is argued that the language in the reciprocal trade agreement with Cuba differs greatly from that contained in the treaty of commercial reciprocity concluded between the United States and Cuba, supra, and clearly indicates an intention on the part of the high contracting parties to meet our decision in the Faber, Coe & Gregg Case, supra, and make it ineffective as to future importations of Cuban cigars, so far as it held that the preferential reduction of 20 per centum did not apply to the taxes or additional duties imposed by virtue of the provisions of section 832 (26 U.S.C.A. §§ 700(c), 701(a), supra.

The pertinent parts of the treaty of commercial reciprocity between the United States and Cuba, 33 Stat. 2136, read:

"Article I

"During the term of this convention, all articles of merchandise being the product of the soil or industry of the United States which are now imported into the Republic of Cuba free of duty, and all articles of merchandise being the product of the soil or industry of the Republic of Cuba which are now imported into the United States free of duty, shall continue to be so admitted by the respective countries free of duty.

"Article II

"During the term of this convention, all articles of merchandise not included in the foregoing Article I and being the product of the soil or industry of the Republic of Cuba imported into the United States shall be admitted at a reduction of twenty percentum of the rates of duty thereon as provided by the Tariff Act of the United States approved July 24, 1897, or as may be provided by any tariff law of the United States subsequently enacted."

"Article VIII

"The rates of duty herein granted by the United States to the Republic of Cuba are and shall continue during the term of this convention preferential in respect to all like imports from other countries, and, in return for said preferential rates of duty granted to the Republic of Cuba by the United States, it is agreed that the concession herein granted on the part of the said Republic of Cuba to the products of the United States shall likewise be, and shall continue, during the term of this convention, preferential in respect to all like imports from other countries. * * *

"Article IX

"In order to maintain the mutual advantages granted in the present convention by the United States to the Republic of Cuba and by the Republic of Cuba to the United States, it is understood and agreed that any tax or charge that may be imposed by the national or local authorities of either of the two countries upon the articles of merchandise embraced in the provisions of this convention, *subsequent to importation and prior to their entering into consumption in the respective countries, shall be imposed and collected without discrimination upon like articles whencesoever imported."* (Italics ours.)

Section 316 of the Tariff Act of 1930, 19 U.S.C.A. § 1316, reads:

Sec. 316. *"Cuban reciprocity treaty not affected.*

"Nothing in this Act [chapter] shall be construed to abrogate or in any manner impair or affect the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902, or the provisions of the Act of December 17, 1903, chapter 1 [sections 124 and 125 of this title]."

No question being raised here as to the authority of the President to enter into the reciprocal trade agreement of August 24, 1934, with Cuba, and it being conceded by counsel for the parties that, under the provisions of the act to amend the Tariff Act of 1930, supra, the President had the power to provide in such trade agreement for a preferential reduction of 20 per centum of the revenue taxes or additional duties provided for in section 832 (26 U.S.C.A. §§ 700(c), 701(a), supra, we deem it unnecessary to quote the provisions of that act.

The pertinent parts of the reciprocal trade agreement with Cuba, 49 Stat. 3559, read:

"Article III

"Articles the growth, produce, or manufacture of the Republic of Cuba, enumerated and described in Schedule II annexed hereto and made a part of this Agreement, shall, on their importation into the United States of America, be granted exclusive and preferential reductions in duties not less than the percentages specified respectively in Column 1 of the said Schedule, such percentages of reduction being applied to the lowest rates of duty, respectively, now

or hereafter payable on like articles the growth, produce or manufacture of any other foreign country.

"No article the growth, produce, or manufacture of the Republic of Cuba enumerated and described in Schedule II annexed hereto, with respect to which a rate of duty is specified in Column 2 of the said Schedule, shall in any case, except as provided in Article VIII or X, be subject to any customs duty in excess of the rate so specified.

"Every article the growth, produce or manufacture of the Republic of Cuba which is not provided for in Article I, and which is not enumerated and described in Schedule II annexed to this Agreement, shall, on importation into the United States of America, be granted an exclusive and preferential reduction in duty of not less than 20 per centum, such percentage of reduction being applied to the lowest rate of duty now or hereafter payable on the like article the growth, produce or manufacture of any other foreign country."

### "Article VIII

"All articles the growth, produce or manufacture of the United States of America or the Republic of Cuba, shall, after importation into the territory of the other country, be exempt from national or federal internal taxes, fees, charges or exactions, other or higher than those payable on like articles of national or any other foreign origin.

"All articles enumerated and described in Schedule I annexed to this Agreement, with respect to which a rate of duty is specified in Column 2 of the said Schedule, shall be exempt from all taxes, fees, charges, or exactions, in excess of those imposed or required to be imposed by laws of the Republic of Cuba in effect on the day on which this Agreement comes into force; and all articles enumerated and described in Schedule II annexed to this Agreement, with respect to which a rate of duty is specified in Column 2 of the said Schedule, shall be exempt from all taxes, fees, charges or exactions, in excess of those imposed or required to be imposed by laws of the United States of America in effect on the day on which this Agreement comes into force.

"The provisions of this Article, insofar as they apply to taxes, fees, charges, or exactions imposed within the United States of America, shall apply only to such taxes, fees, charges, or exactions as are subject to statutory control by the Federal Government of the United States of America."

Schedule II referred to in Articles III and VIII, so far as pertinent, reads:

## SCHEDULE II

| Tariff Act of 1930 Paragraph | Description of articles | Column 1 Minimum preferential reduction to Cuba | Column 2 Maximum rates of duty. Specific rates in United States dollars. $ |
|---|---|---|---|
| | Note: The provisions of this Schedule shall be construed and given the same effect, and the application of collateral provisions of the tariff laws of the United States to the provisions of this Schedule shall be determined insofar as may be practicable, as if each provision of this Schedule appeared respectively in the paragraph of the Tariff Act of 1930 noted in the column at the left of the respective descriptions of articles. | | |
| * * * * * * * | | * * | * * * |
| 605 | Cigars, cigarettes, cheroots of all kinds and paper cigars and cigarettes, including wrappers. | 20% | $2.25 per lb and 12½% ad valorem. |

It will be observed that the quoted provisions of Schedule II of the trade agreement with Cuba relate to a reduction of the duties provided in paragraph 605, section 1, of the Tariff Act of 1930, 19 U.S. C.A. § 1001, par. 605. In column 2 of that schedule we find that the duties, referred to therein as the maximum rates of duty, have been reduced from $4.50 per pound to $2.25 per pound, and from 25 per centum ad valorem to 12½ per centum. A minimum 20 per centum preferential reduction of duties is specified in column 1.

The provisions of that schedule were analyzed and explained in the case of F. H. Von Damm v. United States, 90 F.2d 263, 25 C.C.P.A., Customs, ——, T.D. 49094, and, as they do not directly affect the issues presented by counsel in this case, we deem it unnecessary to further discuss them.

It clearly appears from the second paragraph of Article III of the trade agreement that Cuban products described in Schedule II, with respect to which a rate of duty is specified in column 2, shall not be subject to any customs duties in excess of the rate so specified, "except as provided in Article VIII or X."

It is provided in the first paragraph of Article VIII of the trade agreement that all products of the two countries "shall, *after importation* into the territory of the other * * *, be exempt from national or federal internal taxes, fees, charges or exactions, *other or higher* than those payable on like articles of national or any other foreign origin." (Italics ours.) This provision was undoubtedly intended to prevent either country from discriminating against products imported from the other *in* favor of the products "of national or any other foreign origin," so far as so-called internal revenue taxes, etc. were concerned.

It is provided in the second paragraph of Article VIII that all products of Cuba *for which a rate of duty is specified in column 2 of Schedule II* "shall be exempt from all taxes, fees, charges or exactions, *in excess* of those imposed or required to be imposed by laws of the United States of America *in effect on the day on which this Agreement comes into force."* (Italics ours.) The taxes, fees, charges, or exactions mentioned in the quoted excerpt are expressly limited by the provisions of that article to such as are subject to the con-

trol of the Government of the United States.

The high contracting parties having, in the second paragraph of Article III of the trade agreement, expressly excepted products described in Schedule II, with respect to which a rate of duty was specified in column 2, from "any customs duties" in excess of the rate there so specified, "except as provided in Article VIII or X," it would seem to be clear that it was within their contemplation that at least some of the taxes, fees, charges, or exactions, referred to in Article VIII were customs duties, otherwise Article VIII would not have been included in the excepting clause.

It is the view of counsel for appellant that the language contained in the first paragraph of Article VIII of the trade agreement with Cuba, that is, that all articles of either country "shall, *after importation into the territory of the other country,* be exempt from national or federal internal taxes, fees, charges or exactions, *other or higher* than those payable on like articles of national or any other foreign origin" should be considered in connection with that contained in Article IX of the treaty of commercial reciprocity (33 Stat. 2141) "that any tax or charge that may be imposed by the national or local authorities of either of the two countries upon the articles of merchandise embraced in the provisions of this convention, *subsequent to importation* and *prior to their entering into consumption* in the *respective countries,* shall be imposed and collected without discrimination upon like articles whencesoever imported," and that, when so considered, it is clear that the language used in the trade agreement was deliberately chosen to meet our decision in the Faber, Coe & Gregg Case, supra, and to make clear the intent of the high contracting parties that the 20 per centum preferential reduction in customs duties should apply to all taxes, etc., imposed on Cuban importations "subsequent to importation and *prior to their entering into consumption,"* and that the taxes, fees, etc., specified in Article VIII, 49 Stat. 3564 (to which the 20 per centum preferential reduction does not apply), are such as are "levied after the importation is complete"; that is, after the goods have left customs custody, lost their "character as imports," and entered into the commerce of the country. (Italics ours.)

If counsel are right in their contentions and such was the intent of the high con-

tracting parties, the language contained in the second paragraph of Article III of the trade agreement, 49 Stat. 3561, to the effect that products described in Schedule II, for which a rate of duty is specified in column 2, shall not in any case, *"except as provided in Article VIII or X,* be subject to any *customs duty* in excess of the rate so specified," was not well chosen. (Italics ours.)

Furthermore, as argued by counsel for the Government and agreed to by counsel for appellant in their supplemental brief, if the high contracting parties did not intend that the terms "taxes, fees, charges or exactions," contained in Article VIII, should include such as were customs duties, then, of course, the excepting clause in the second paragraph of Article III would have no application to the additional customs duties provided for in section 832 (26 U.S.C. A. §§ 700(c), 701(a), supra, and assessed against the involved cigars, and there was no legal authority for the assessment of such duties. This is so because it is expressly provided in Article III that the products described in Schedule II, for which a rate of duty is specified in column 2 (which includes the involved cigars), shall not in any case "be subject to any customs duty in excess of the rate so specified." Accordingly, instead of being entitled to a reduction of only 20 per centum of such duties, as claimed in the instant case, if the contentions of counsel for appellant are sound, appellant, under a proper protest, would be entitled to a refund of all such additional duties.

The high contracting parties knew, of course, that taxes imposed upon merchandise after its importation into the United States may or may not be customs duties; that those imposed while the goods retain their distinctive character as imports are customs duties, as held in the Faber, Coe & Gregg Case, supra, and that those imposed upon goods which have entered into the commerce of the country and lost their distinctive character as imports are not customs duties. Possessed of this information, they, nevertheless, provided in the second paragraph of Article III of the trade agreement that products (cigars among others) described in Schedule II, for which a rate of duty was specified in column 2, should not in any case, *"except* as provided in *Article VIII* or X, be subject to any customs duty in excess of the rate so specified." (Italics ours.)

It is unthinkable that the parties concerned would have included Article VIII in the excepting clause in the second paragraph of Article III if they had had in mind that the taxes, fees, charges, or exactions mentioned in Article VIII applied only to goods which had entered into the commerce of the country and lost their distinctive character as imports. We think it is clear that they did not intend to limit the provisions for taxes, fees, etc., contained in Article VIII, to such as were not customs duties, but, on the contrary, intended to include all taxes, fees, etc., whether or not customs duties, and, for that reason, used the phrase *"after importation"* in Article VIII rather than the clause *"subsequent to importation and prior to their entering into consumption,"* contained in Article IX of the treaty of commercial reciprocity. (Italics ours.)

We deem it unnecessary to extend this discussion. It is sufficient to say that we have carefully examined the legislative history, referred to by counsel for appellant, and other matters contained in their briefs, and find nothing therein which, in our opinion, would warrant a contrary holding.

Accordingly, the judgment is affirmed.

Affirmed.